**UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| Jeffrey Weston, | ) | |
| | ) | |
| Petitioner, | ) | C.A. No.: 4:10-00107-JMC |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Warden, Perry Correctional Institution | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Respondent's motion for summary judgment. [Doc. 21]. Petitioner Jeffrey Weston, a state prisoner proceeding *pro se*, filed a habeas corpus petition under 28 U.S.C. § 2254. [Doc. 1]. The Magistrate Judge's Report and Recommendation [Doc.37], filed on January 26, 2011, recommends that Respondent's motion for summary judgment be granted. The Report and Recommendation sets forth in detail the relevant facts and legal standards on this matter, and the court incorporates the Magistrate Judge's Report and Recommendation herein without a recitation.

The Magistrate Judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. *See* 28 U.S.C.§636(b)(1).

1

After reviewing the Magistrate Judge's Report and Recommendation, the record, the applicable law and Weston's objections, the court adopts the Magistrate Judge's Report and Recommendation, **GRANTS** Respondent's Motion for Summary Judgment, and dismisses Weston's habeas corpus petition without an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The court incorporates by reference the Magistrate Judge's discussion of the procedural and factual history of this case. [Doc. 37, at 2-25].

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue to survive summary judgment. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support

2

of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

Weston alleges numerous grounds in support of his habeas petition. *See* [Doc. 1]; [Doc. 1-1]; [Doc. 37, at 12-25]. After receiving the Magistrate Judge's Report and Recommendation on the pending motions, Weston timely filed objections. [Doc. 44]. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Magistrate Judge's Report and Recommendation, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the court was able to discern specific objections to certain portions of the Magistrate Judge's Report and Recommendation. Those specific objections and their related grounds are addressed below.

### I.     Ground Five

Weston contends that the trial judge denied him due process by refusing to direct a verdict of acquittal on the charge of murder. [Doc. 1-1, at 2]. Weston first objects that the evidence presented at trial was contrary to state and federal law and that the state failed to sufficiently prove each of the required elements of his crimes. [Doc. 44, at 4]. Weston also objects that he was "denied critical discovery," that there is exculpatory evidence that the incident was an accident, that there

3

is evidence of self-defense, and that there is evidence he should have been charged with involuntary manslaughter. [Doc. 44, at 5].

The court finds Weston's objections unpersuasive. As the Magistrate Judge noted, Weston's "claim is based on a violation of state law, [and] goes to the sufficiency of the evidence." [Doc. 37, at 37]. Consequently, although a federal court may review such a claim, the federal court's review is "sharply limited." *See Weston v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (quoting *Wright v. West*, 505 U.S. 277, 296 (1992)). "Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review." *Id.* at 405-06 (citing *Wright*, 505 U.S. at 292). A federal court reviewing such a claim must take into account all the evidence, direct and circumstantial, and grant the state the benefit of the doubt as to all inferences derived from proven facts. *See U.S.v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Where conflicting inferences arise out of the facts, the court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson v. Virginia*, 433 U.S. 307, 326 (1979). Furthermore, the standard in *Jackson* "must be applied with specific reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 433 U.S. at 324 n. 16.

The Magistrate Judge's Report and Recommendation cited a lengthy discussion from the South Carolina Supreme Court's order on the issue of sufficiency of the evidence in Weston's guilt determination. [Doc. 37, at 38-40] (citing *State v. Weston*, 367 S.C. 279, 292-96, 625 S.E.2d 641, 648-50 (2006)). In its order, the South Carolina Supreme Court stated that "[i]f there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case properly submitted to the jury." *Id.* at 292, 625 S.E.2d at 648. The South Carolina Supreme Court then conducted a thorough analysis of the circumstantial evidence presented at Weston's trial. *Id*. at 292-96, 625 S.E.2d at 648-50. The Court concluded that

4

"[t]he . . . evidence, although circumstantial, is clearly sufficient to withstand a motion for a directed verdict. The judgment below is affirmed." *Id*. at 295, 625 S.E.2d at 649.

The Magistrate Judge begins his analysis by noting that the standard to be applied is the deferential one outlined in 28 U.S.C. 2254(d). Under that standard, a federal court reviewing a habeas petition may not grant relief unless the state court's adjudication of the matter "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. 2254(d)(1); *see Williams v. Taylor* 529 U.S. 362, 398 (2000). As such, the court agrees with the Magistrate Judge's finding that there was "no reversible error in the trial judge's refusal to grant a directed verdict on this claim based on this testimony and evidence, or in the state court's upholding of this decision on appeal." [Doc. 37, at 40]. Accordingly, the court finds Weston's objections unpersuasive and adopts the Magistrate Judge's conclusion.

**II.     Ground Six**

Weston objects to the Magistrate Judge's findings in his Report and Recommendation related to Weston's allegations of "ineffective assistance of trial counsel due to his failure to have Weston undergo a mental evaluation by the Mental Health Department." [Doc. 37, at 41]. In essence, Weston's extensive objection is that his trial counsel failed to have him evaluated by mental health officials and that his trial counsel knew or should have known that he was entitled to have a competency hearing under *State v. Blair*, 275 S.C. 529, 273 S.E.2d 536 (1981). [Doc. 44, at 8]. Weston further objects by criticizing the lower court's conclusion for failing to consider "all of the circumstances involved in this matter such as the written report or rather notice the lack of such report of the two alleged private psychiatrists in determining that counsel was or was not ineffective for investigating Weston's competency." [Doc. 44, at 16]. He also argues that, contrary to the Magistrate Judge's conclusion, the elements of the test in *Strickland v. Washington,* 466 U.S. 668,

5

688 (1984) under which an ineffective assistance of counsel claim is evaluated were established in his case. The court disagrees.

Again, the Magistrate Judge begins his analysis by noting that the standard to be applied is the deferential one outlined in 28 U.S.C. 2254(d). To establish that he received ineffective assistance of counsel, a petitioner must make a twofold showing. *See Wiggins v. Smith*, 539 U.S. 510 (2003). First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 688 (1984). "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." *Id*. at 689. *See also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight"). The inmate must also demonstrate that he was prejudiced by his attorneys' ineffectiveness. *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). In other words, he must prove "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See also Florida v. Nixon*, 543 U.S.175 (2004); *Palacio v. State*, 333 S.C. 506, 511 S.E.2d 62 (1999).

In his analysis of this claim, the Magistrate Judge discussed the PCR judge's conclusion that Weston did not establish his claim of ineffective assistance of counsel. During the PCR hearing, the PCR judge noted that Weston's trial counsel testified that instead of allowing state mental health physicians to examine Weston's capacity to stand trial, Weston's trial counsel choose to have private physicians conduct the examination because "[t]rial counsel explained that having the Applicant evaluated by the State would probably provide the State with damaging information, i.e. facts of the crime and exploitable insights into the mental health of the Applicant, as opposed to a more

6

controlled scenario of having the Applicant independently evaluated." [Doc. 37, at 43] (citing [Doc. 22-15, at 23-24]).  The PCR court found Weston's trial counsel's decision to use private psychiatrists to be "a legitimate strategic decision."  [Doc. 37, at 43]  (citing [Doc. 22-15, at 23-24]).  The PCR court held that "[w]here counsel articulates valid reasons for employing a certain strategy, counsel's choice of tactics will not be deemed ineffective assistance."  [Doc. 37, at 43] (citing [Doc. 22-15, at 23-24]).  Consequently, the PCR court concluded that Weston had not established that his counsel committed any error much less an error necessary to establish the first prong of the *Strickland* test.  [Doc. 37, at 43]  (citing [Doc. 22-15, at 23-24]).  Likewise, the PCR court concluded that Weston had not established that he was prejudiced under the second prong of the *Strickland* test.   [Doc. 37, at 43]  (citing [Doc. 22-15, at 23-24]).

After providing a summary of Weston's trial counsel's testimony on this issue, the Magistrate Judge noted that "[t]he PCR judge found trial counsel's testimony to be credible and [Weston's] testimony to be not credible." [Doc. 37, at 44].  The Magistrate Judge concluded that "the PCR court's determination with regard to the issue concerning mental state evaluation was neither contrary to nor involved an unreasonable application of Federal law as interpreted by the United State Supreme Court." [Doc. 37, at 45]; *see Williams*, 529 U.S. at 398.

Based upon a review of the record, this court agrees with the Magistrate Judge's conclusion.

### III.    Ground Seven

Weston next alleges that he received ineffective assistance of counsel because "Counsel Swerling knew that the State had offered a plea agreement to Counsel Hiskar for Weston to plead [GBMI] to voluntary manslaughter. [Doc. 1-1, at 3].  However, Counsel Swerling was so interested in the publicity from the media concerning this case, that he advised Weston not to" accept the plea offer. [Doc. 1-1, at 3]. "Therefore, Counsel Swerling was ineffective for advising Weston not to listen to his other Counsel Hiskar about the plea offer and proceed to trial." [Doc. 1-1, at 3].

7

In recommending that Respondent's Motion for Summary Judgment be granted, the Magistrate Judge concluded that "[t]he state PCR court's findings were not contrary to clearly established federal law or an unreasonable interpretation of the facts in light of the evidence in the state court proceedings." [Doc. 37, at 45-46].

The PCR court's findings were based on a determination of whether the court found Weston's or his trial counsel's testimony to be credible. The conflict in the testimony concerned "whether trial counsel was ineffective for failing to properly advise the Applicant and allow him to plead guilty to voluntary manslaughter . . . ." [Doc. 37, at 45]; [Doc. 22-15, at 23]. Weston testified at the PCR hearing that he would have taken a plea offer of guilty by mental insanity to voluntary manslaughter if his trial counsel had not talked him out of doing so, even though he believed he was not guilty of any offense in relation to his mother's death. [Doc. 22-14, at 13-15]. By contrast, Weston's trial counsel testified that Weston would only agree to plea to involuntary manslaughter because "the most he was ever conceding was that it was an accident or that he was guilty of involuntary manslaughter." [Doc. 22-14, at 26]. His trial counsel also testified that if "Mr. Weston had wanted to plead to voluntary manslaughter, this lawyer would never have interfered with his right to do so." [Doc. 22-14, at 41]; [Doc. 22, at 68].

In light of this conflicting testimony, the PCR court found Weston's counsel to be more credible. [Doc. 37, at 45]; [Doc. 22-15, at 23]. According to the PCR court,

> Regarding whether trial counsel was ineffective for failing to properly advise the Applicant and "allow" him to plead guilty to voluntary manslaughter – this Court finds trial counsel's testimony credible that the Applicant never wanted to plead to voluntary manslaughter and if he did want to do so, trial counsel would not have interfered. This Court finds that the Applicant's testimony that trial counsel's advice dissuaded him from otherwise pleading to voluntary manslaughter to be incredible.

[Doc. 22-15, at 23].

Weston objects to the Magistrate Judge's conclusion with respect to the PCR court's findings. Weston's primary argument is that his counsel was ineffective because he persuaded

8

Weston not to accept the plea offer of voluntary manslaughter. [Doc. 44, at 23]. According to Weston, his trial counsel was more interested in the media publicity that his trial would likely create. [Doc. 44, at 23]. Weston also asserts that he rejected the plea of voluntary manslaughter because of his counsel's undue influence over him. [Doc. 44, at 23].

The court finds Weston's objections are unpersuasive because they do not overcome the fact that this court may not grant relief based upon the PCR court's factual findings unless they are objectively unreasonable. *See* § 2254(d)(2). *See also Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination"). Further, the PCR court's findings are entitled to a presumption of correctness, which Weston must rebut by clear and convincing evidence. *See* § 2254(e)(1). Moreover, " 'federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.' " *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)); *Buckner v. Polk*, 453 F.3d 195, 204 n.8 (4th Cir. 2006) (the task of a reviewing court in habeas corpus "is not to decide the credibility issue *de novo* but to determine whether [Weston] has produced clear and convincing evidence that the [PCR] court's resolution of that issue was incorrect"). This court agrees with the Magistrate Judge that the PCR court's findings are not objectively unreasonable. Accordingly, the court adopts the Magistrate Judge's Report and Recommendation with respect to this claim.

### IV.    Ground Eight

Weston alleges in ground eight that his trial counsel was ineffective "for not allowing [him] to testify." [Doc. 1-1, at 3]. After considering this allegation, the Magistrate Judge concluded that summary judgment in favor of Respondent was appropriate because "this issue was not raised before

9

the PCR court and/or not ruled on by the PCR court. Therefore, these issues are procedurally barred on federal habeas review." [Doc. 37, at 47].

Weston objects to the Magistrate Judge's Report and Recommendation by arguing that summary judgment in favor of Respondents should be denied because of "state and trial attorney misconduct and irregularities." [Doc. 44, at 26]. Weston also argues that he is entitled to habeas relief because his counsel failed to file a SCRCP Rule 59(e) motion to alter or amend and that this failure resulted in a violation of his Sixth and Fourteenth Amendment rights. [Doc. 44, at 26].

First, the court notes that the Magistrate Judge correctly outlined the law related to procedural default in the state courts and its effect on the ability of a federal court to consider a claim under habeas review. The court incorporates by reference that discussion. [Doc. 37, at 30-33, 46-54]. In essence, the Magistrate Judge concluded that these allegations were procedurally defaulted because they were not raised in state court. *See Coleman v. Thompson,* 502 U.S. 722, 731 (1991).

Here, the record reveals that this ground is procedurally defaulted because Weston did not obtain a ruling on this issue in the Order of Dismissal. [Doc. 22-15, 15-25]. Pursuant to S.C. Code Ann. § 17-27-80 (2003), the PCR judge must make specific findings of fact and state expressly the conclusions of law relating to each issue presented. In the present case, however, the PCR court did not address Weston's allegation in the Order of Dismissal. Weston's failure to file a motion to alter or amend prevented the Supreme Court of South Carolina from reviewing the allegation on certiorari: in other words, the Supreme Court of South Carolina could not exercise its discretion on review since there was nothing for the court to review as to the ineffectiveness allegation because Weston had abandoned the issue in the PCR court.

Weston's procedural default can only be excused if he can demonstrate both cause for the procedural default and prejudice as a result of the alleged constitutional violation, or if he can demonstrate that failure to review the constitutional claim will result in a fundamental miscarriage

10

of justice. *Coleman*, 501 U.S. at 749-50. Here, Weston fails to meet his burden because he cannot show cause for the default because he could have raised the issue to the state supreme court on certiorari.

Also, the ineffective assistance of state habeas counsel cannot excuse procedural default given that there is no Sixth Amendment right to effective assistance of counsel in state habeas proceedings. *See Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. . . . Coleman contends that it was his attorney's error that led to the late filing of his state habeas appeal. This error cannot be constitutionally ineffective; therefore, Coleman must "bear the risk of attorney error that results in a procedural default") (citations omitted); *see also Longworth v. Ozmint*, 377 F.3d 437, 448 n. 2 (4th Cir. 2004).

Accordingly, the court adopts the Magistrate Judge's Report and Recommendation with respect to this ground.

## V.     Grounds Nine, Ten, Twelve, Thirteen, Fifteen, Seventeen, Eighteen and Nineteen

In ground nine, Weston alleges that trial counsel was ineffective when he failed to move for a change of venue. [Doc. 1-1, at 4].  In ground ten, Weston alleges that trial counsel was ineffective for not moving to sequester the jury. [Doc. 1-1, at 4]. Weston contends in ground twelve that trial counsel was ineffective for failing to make a motion to exclude cameras from the courtroom. [Doc. 1-1, at 5].  He contends in ground thirteen that trial counsel was ineffective for failing to properly object that "Richland County Sheriff's Deputy Kathy Jarvis gave unqualified expert testimony." And in ground fifteen, Weston contends that trial counsel was ineffective when he did not give copies of all discovery materials to Weston before the start of trial. [Doc. 1-1, at 8].

In ground seventeen, Weston contends that trial counsel was ineffective for failing to properly prepare, investigate, and research prosecution witness Joanne W. Batchelor, the records custodian from the South Carolina Dept. of Public Safety, and that counsel failed to adequately cross-examine

11

or otherwise refute the inference from her testimony that Weston did not have a valid South Carolina driver's license. [Doc. 1-1, at 11]. Further, Weston claims in ground eighteen that trial counsel was ineffective for failing to properly prepare, investigate, and research that he was living next door to a uniformed Richland County Deputy Sheriff when he moved to Confederate Avenue from his mother's former residence, and that counsel did not ask Lt. Howard Hughes and landlord Perna about this information during his cross-examination of both at trial. [Doc. 1-1, at 13]. Finally, he asserts in ground nineteen that trial counsel was ineffective for failing to properly investigate the case and present evidence that Weston "lived and worked in Seattle, WA under his real name and social security number" and that he was "not living in Seattle, WA in an attempt to hide from or evade law enforcement." [Doc. 1-1, at 15].

The Magistrate Judge concluded that all of these allegations were procedurally defaulted because they were not raised in state court. [Doc. 37, at 49]; *See Coleman*, 501 U.S. at 731. As to grounds nine, ten, twelve, thirteen, seventeen and nineteen, Weston objects by arguing that procedural irregularities and his counsel's misconduct prevented him from filing a SCRCP. Rule 59(e) motion to alter or amend. [Doc. 44, at 28, 35]. Weston also argues that he was not able to file a Rule 59(e) motion because of the PCR court's ruling on hybrid representation and because his counsel's failure to file a motion to alter or amend resulted in a violation of his Sixth and Fourteenth Amendment rights. [Doc. 44, at 28-29].[1]

As to ground fifteen, Weston objects by arguing that "a Brady violation is a constitutional violation which also raises a claim of 'actual innocence,'" and that "[t]here is no statutory limitations for an actual innocence claim as applied to a Brady violation." *See Brady v. Maryland*, 373 U.S. 83 (1963). However, the court finds that Weston's objections are without merit because he has shown

---

[1]Hybrid representation is "representation which is partially *pro se* and partially by counsel." *State v. Stuckey*, 333 S.C. 56, 57, 508 S.E.2d 564, 564 (1998). In *Stuckey*, the South Carolina Supreme Court held that "there is no Sixth amendment right to hybrid representation." *Id.*

12

neither cause nor prejudice sufficient to overcome his procedural default. Again, none of these allegations were expressly asserted in state PCR proceedings; he did not present any testimony on these claims; and none of these allegations were presented to the South Carolina Supreme Court on certiorari. As a result, each allegation is procedurally defaulted under *Coleman*, 501 U.S. at 729-30; *see also Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) ("the exhaustion requirement demands that the petitioner 'do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face up and squarely; the federal question must be plainly defined. Bleak references which hint that a theory may be lurking in the woodwork will not suffice'") (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)); *see also Kornahrens v. Evatt*, 66 F.3d 1359, 1362 (4th Cir. 1995) (Even under *in favorem vitae* review an inmate's claim is procedurally barred unless specifically raised to the state supreme court).

Furthermore, Weston cannot show cause for the default since the issue could have been raised to the state supreme court on certiorari, and the ineffective assistance of state habeas counsel cannot excuse procedural default given that there is no Sixth Amendment right to effective assistance of counsel in state habeas proceedings. *Coleman*, 501 U.S. at 752-53 ("There is no constitutional right to an attorney in state post-conviction proceedings. . . . Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. . . . Coleman contends that it was his attorney's error that led to the late filing of his state habeas appeal. This error cannot be constitutionally ineffective; therefore Coleman must 'bear the risk of attorney error that results in a procedural default'") (citations omitted); *Longworth v. Ozmint*, 377 F.3d 437, 448 n. 2 (4th Cir. 2004).

Weston cannot show prejudice from the default because he failed to present evidence related to these allegations during his PCR hearing. Thus, Weston has merely alleged, in conclusory and general terms, that counsel's performance was inadequate without offering proof of what an adequate representation would have yielded. Consequently, these allegations are not sufficient to merit habeas

corpus review. *Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) ("a petitioner is *not* entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible") (internal quotations omitted) (emphasis in original). *See also Ruark v. Gunter,* 958 F. 2d 318, 319 (10th Cir. 1992) ("naked allegations" are not cognizable under federal habeas corpus statutes); *Hall v. Bellmon,* 935 F. 2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be granted").

### VI.     Grounds Eleven and Fourteen

Weston's eleventh ground is that the trial judge erred by denying counsel's motion to sequester the witnesses during trial. [Doc. 1-1, at 4]. Specifically, he claims that the prosecution's "witnesses were allowed to sit in [the] courtroom and listen to and glean information from witnesses who had already testified thus contaminating and tainting those witnesses and their testimony. This destroy[ed] Weston's ability to [receive] a fair trial." [Doc. 1-1, at 4]. In ground fourteen, Weston contends that the trial judge erred by not disqualifying the Fifth Circuit Solicitor's Office from prosecuting the case against Weston based upon an alleged conflict of interest.

The Magistrate Judge concluded that Weston's claims "are procedurally barred on habeas review" because Weston did not raise them at his trial or on direct appeal. [Doc. 37, at 51]. Weston's objections to the Magistrate Judge's Report and Recommendation as they relate to these claims, are essentially the same as his objections to the Magistrate Judge's conclusions with respect to the claims discussed in sections IV and V above. [Doc. 44, at 30-31]. Based upon a review of the record in this case, the court finds that Weston's objections are not persuasive and adopts the Magistrate Judge's Report and Recommendation [Doc. 37, at 51-52] on these claims. Similarly, the court bases its conclusion on the legal rationale upon which it granted summary judgment in sections IV and V above. Accordingly, Respondent's Motion for Summary Judgment with respect to these claims is granted.

14

**VII.    Grounds Sixteen and Twenty**

In ground sixteen, Weston alleges that trial counsel was ineffective for failing to properly prepare, investigate, and research prosecution witness Toni E. Franchey, Weston's sister and daughter of the victim, Ms. Frances Franchey. [Doc. 1-1, at 9] He contends that his sister made "numerous false statements and testif[ied] to things that she could not possibly know as facts since she and [Weston] were estranged and had not seen, spoken to, written, or communicated with each other for more than 20 years prior to the disappearance of their mother." [Doc. 1-1, at 9]. Weston further maintains that counsel "gave up" after only a brief cross-examination Weston's sister; and that a thorough cross-examination could have established "the lies and false statements" that she made. [Doc. 1-1, at 9-10]. In ground twenty, Weston contends that "[t]rial counsel was ineffective for failing to make a motion to trial court Judge G. Thomas Cooper, Jr. to recuse himself as trial court judge at [Weston's] trial, after Judge Cooper had been prejudiced against [Weston], and made remarks showing prejudice against [Weston] during an in camera hearing before [Weston's] trial." [Doc. 1-1, at 17].

The Magistrate Judge found that Weston "did not address ground sixteen of ineffective assistance of counsel in his petition for writ of certiorari to the state supreme court and did not receive a ruling. [Weston] did not raise the issue in Ground Twenty in this application for PCR or in his petition for writ of certiorari to the state supreme court." [Doc. 37, at 53]. For these reasons, the Magistrate Judge concluded that Weston's failure to raise these claims in state court constituted a waiver and abandonment of them and that habeas review of this issue procedurally barred. [Doc. 37, at 53]. Weston's objections to the Magistrate Judge's Report and Recommendation as they relate to these claims are essentially the same as his objections to the Magistrate Judge's conclusions with respect to the claims discussed in sections IV and V above. [Doc. 44, at 35-36]. Based upon a review of the record in this case, the court finds that Weston's objections are not persuasive and adopts the Magistrate Judge's Report and Recommendation [Doc. 37, at 52-54] on these claims.

## CONCLUSION

For the foregoing reasons, the court adopts the Magistrate Judge's Report and Recommendation [Doc. 37], **GRANTS** Respondent's Motion for Summary Judgment [Doc. 21] and **DISMISSES** Weston's petition for writ of habeas corpus without an evidentiary hearing. [Doc. 1].

## CERTIFICATE OF APPEALABILITY

The law governing certificates of appealability provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met.

**IT IS SO ORDERED.**

s/ J. Michelle Childs
United States District Judge

April 21, 2011
Greenville, South Carolina